## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| HONEYWELL INTERNATIONAL INC. and HAND HELD PRODUCTS, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> SCANDIT AG, <br><br> *Defendant*. | CIVIL ACTION NO. _____ <br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Honeywell International Inc. and Hand Held Products, Inc. (collectively, "Honeywell" or "Plaintiffs"), by and through their undersigned counsel, file this Complaint against Scandit AG ("Scandit" or "Defendant") and allege on knowledge as to their own actions, and upon knowledge and information and belief as to the actions of others as follows:

## NATURE OF THE ACTION

1.     This action arises under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*, from Defendant's infringement of United States Patent Nos. 9,304,376 ("'376 Patent"); 9,477,856 ("'856 Patent"); 10,360,426 ("'426 Patent"); 11,816,530 ("'530 Patent"); and 11,928,551 ("'551 Patent") (collectively, the "Asserted Patents").

## THE PARTIES

2.     Plaintiff Honeywell International Inc. ("Honeywell International") is a Delaware corporation with its principal place of business at 855 S. Mint Street, Charlotte, North Carolina 28202.

3.      Plaintiff Hand Held Products, Inc. ("Hand Held") is a Delaware corporation and a wholly owned subsidiary of Honeywell International, with its principal place of business at 855 S. Mint Street, Charlotte, North Carolina 28202.

4.      On information and belief, Defendant Scandit AG ("Scandit") is a Swiss corporation with its principal place of business at Hardturmstrasse 181, 8005 Zurich, Switzerland.

## JURISDICTION AND VENUE

5.      This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action involves a claim arising under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq*. The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), as the matter in controversy exceeds $75,000.

6.      This Court has personal jurisdiction over Scandit under the laws of this State and consistent with the underlying due process principles of the United States Constitution. Scandit is subject to jurisdiction in the United States, and specifically in the State of Texas, pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure.

7.      On information and belief, Scandit is doing business in this State and District, has significant contacts in this State and District, has offered for sale and sold infringing products in this State and District, and has committed acts in this State and District that are subject of the counts set forth herein. For example, Scandit offers for sale the infringing technology through the Apple App store and Google Play store in the United States, including in this State and District. *See* Exs. 1 and 2.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(c) and 28 U.S.C. § 1400(b). *See In re HTC Corp.*, 889 F.3d 1349 (Fed. Cir. 2018).

## HONEYWELL'S HIGH-PERFORMANCE SCANNERS
## AND HISTORY OF INNOVATION

9.     Honeywell International itself traces its roots to 1904 and an engineer named Mark Honeywell from Wabash, Indiana who developed and installed the first hot-water-heating system in the United States. Honeywell International would later play a key role in U.S. war efforts, including inventing and manufacturing the first electronic autopilot system. After entering the computer business through a merger with Raytheon Corporation in 1957, Honeywell International developed and engineered the instruments that safely landed Neil Armstrong and Buzz Aldrin on the moon. Research is one of the keys to Honeywell International's success and provides the necessary cornerstone for its cutting-edge products.

10.     Honeywell International has also been a pioneer in the barcode scanning industry since the 1960s. Since that time, thousands of retailers, distributors, healthcare providers, and industrial organizations have used Honeywell's barcode scanners to improve efficiency, speed, and accuracy in their operations.

11.     Honeywell International acquired Hand Held in 2007. Hand Held complimented Honeywell International's legacy of innovation with important inventions and products in the barcode scanning industry. The Asserted Patents, described in more detail below, reflect the breadth of Honeywell's extensive dedication and investment in barcode scanning technology.

12.     Early barcode scanners were designed to read linear, one-dimensional (1D) barcodes. These linear barcodes can contain only a handful of characters. Accordingly, to encode longer strings of data, 1D barcodes would need to be physically enlarged or extended. This is not suitable for all circumstances.

13.     As a result, various two-dimensional (2D) barcodes, which can also use shapes to encode data, were designed. Because the data can be encoded in multiple rows and/or multiple

axis and may be based on both a vertical and horizontal arrangement of shapes, 2D barcodes can encode exponentially more data in the same amount of space compared to their 1D counterparts. Exemplary 1D and 2D barcodes are reproduced below:



14.    The advent of 2D barcodes ushered in a new era with a need for advanced barcode scanners that could decode these complex arrangements of shapes and sizes. As a pioneer in advanced 2D barcode scanners, Honeywell developed an array of products and technologies that allowed barcode scanners to seamlessly read 1D and 2D barcodes. Barcode scanners, because of Honeywell's advancements, can now quickly decode any type of barcode, regardless of environment, and can automatically adjust to different users to provide quick and accurate scanning and decoding.

15.    One such innovation is the Honeywell's SwiftDecoder solution, which enables barcode scanning apps and transforms mobile devices into powerful tools that help increase operational efficiency and decrease costs. It can use augmented reality (AR) to overlay additional visual information to help improve workflows.

## **SCANDIT'S INFRINGING ACTIVITIES**

16.     Scandit has infringed and continues to infringe on Honeywell's valuable intellectual property, including at least the Asserted Patents. Scandit is using Honeywell's patented technology without a license or Honeywell's permission.

17.     According to Scandit, its Shelfview product is "A cost-efficient shelf intelligence solution, enabling retailers the flexibility to increase automation as their needs evolve, optimizing operating costs, and minimizing upfront capital commitments." *See* Ex. 3. And that "Our experienced Enterprise-Level Success team expertly supports large-scale retail deployments, guiding you through every stage of ShelfView integration: evaluating environments, setting up data capture, and configuring intelligence dashboards. Our know-how ensures you achieve better shelf visibility and maximum ROI." *Id*.

18.     According to Scandit, its Scandit Barcode Scanning for Wearable Devices "Turn next gen camera-enabled devices into scanners with Scandit mobile computer vision and augmented reality (AR)." *See* Ex. 4.

19.     According to Scandit, its Scandit Case "provides the protection, ergonomics, durability and accuracy needed to turn consumer-grade smartphones into enterprise-grade scanning devices." *See* Ex. 5.

[https://web.archive.org/web/20191026205617/https://www.scandit.com/products/case/]

20.     According to Scandit, its Scandit Barcode Scanner SDK "scan[s] multiple barcodes at once, then add visual feedback to provide real-time insights." *See* Ex. 6.

21.     On May 16, 2019, Honeywell sent Scandit a letter notifying Scandit that its scanning solutions infringe several Honeywell patents including the '376 and '856 Patents.

22.     Honeywell provided Scandit with exemplary and representative claim charts on May 16, 2019, explaining how Scandit was infringing the '376 and '856 Patents.

23.     Scandit's actions are willful or at least objectively reckless as to the risk of infringing a valid patent, and this objective risk was either known or should have been known by Scandit.

## THE ASSERTED PATENTS[1]

24.     The '376 Patent, titled "Optical Redirection Adapter," issued on April 5, 2016 and names inventor Donald Anderson. The '376 Patent issued from U.S. Patent Application Serial No. 13/771,508 filed on February 20, 2013. A true and accurate copy of the '376 Patent is attached hereto as Exhibit 7.

25.     Hand Held is the owner and assignee of the entire right, title, and interest in and to the '376 Patent and holds the right to sue and recover damages for infringement thereof.

26.     The '376 Patent relates to a barcode reader adapter for an electronic device. In the prior art, electronic devices (*e.g.*, smart phone) did not permit an ergonomically sound position for a user to read a barcode from the camera on a device. Electronic devices configured to read barcodes in the prior art caused users repeatable wrist, neck, and/or eye strains or injury.

27.     The '376 Patent describes and claims novel and unconventional methods to address the problems in the prior art. The '376 Patent describes and claims technical improvements to electronic devices configured to read barcodes.

---

[1] All descriptions of the inventions herein are presented to give a general background of those inventions. Such statements are not intended to be used, nor should be used, for purposes of patent claim interpretation. Honeywell presents these statements subject to, and without waiver of, its right to argue that claim terms should be construed in a particular way, as contemplated by claim interpretation jurisprudence and the relevant evidence.

28.    For example, before the '376 Patent, it was not well-understood or conventional for a user to combine an ergonomic accessory with an electronic device configured to read barcodes to permit ergonomically sound use of the device's camera to read barcodes (as claimed in claim 1 of the '376 Patent).

29.    The '376 Patent is directed to patent eligible subject matter under 35 U.S.C. § 101 and is entitled to a presumption of validity.

30.    The '856 Patent, titled "System Having an Improved User Interface for Reading Code Symbols," issued on October 25, 2016 and names inventors Geoffrey Gelay, Robert Michael Hussey, and Bhishma Thakkar. The '856 Patent issued from U.S. Patent Application Serial No 14/991,389 filed on January 8, 2016. A true and accurate copy of the '856 Patent is attached hereto as Exhibit 8.

31.    Hand Held is the owner and assignee of the entire right, title, and interest in and to the '856 Patent and holds the right to sue and recover damages for infringement thereof.

32.    The '856 Patent relates to devices for reading barcode symbols. In the prior art, replicating the user experience of traditional barcode readers on mobile devices configured to read barcode symbols was a difficult problem. For example, methods in the prior art did not direct the aim of the scanning operation on a mobile device and did not provide an intuitive trigger to activate the scanning operation on a mobile device. This led to user confusion about which barcode was actually scanned, particularly when multiple barcodes were in the field of view.

33.    The '856 Patent describes and claims novel and unconventional methods to address the problems in the prior art. The '856 Patent describes and claims technical improvements to barcode readers.

34.    For example, before the '856 Patent, it was not well-understood or conventional for mobile devices configured to read barcodes to combine a camera, a user interface system with a visual display, and a processor coupled to the camera and the user interface system for capturing a barcode image, displaying the image on the mobile device display, determining whether a barcode is readable by the processor, and displaying a visual indicator overlaid on the barcode once the processor determined whether the barcode is readable (as claimed in claim 7 of the '856 Patent).

35.    The '856 Patent is directed to patent eligible subject matter under 35 U.S.C. § 101 and is entitled to a presumption of validity.

36.    The '426 Patent, titled "Computer Configured to Display Multimedia Content," issued on July 23, 2019 and names inventors Timothy Williams and Timothy Meier. The '426 Patent issued from U.S. Patent Application Serial No. 15/693,659 filed on September 1, 2017. A true and accurate copy of the '426 Patent is attached hereto as Exhibit 9.

37.    Honeywell International is the owner and assignee of the entire right, title, and interest in and to the '426 Patent and holds the right to sue and recover damages for infringement thereof.

38.    The '426 Patent relates to producing multimedia content viewable on a display in response to decoding a barcode. In the prior art, certain meaningful information was not displayed to a user decoding decodable indicia.

39.    The '426 Patent describes and claims novel and unconventional methods to address the problems in the prior art. The '426 Patent describes and claims technical improvements to barcode readers.

40.     For example, before the '426 Patent, it was not well-understood or conventional for a computer to decode a barcode and, in response to decoding a barcode, produce on a visual display decoded message data from the barcode and embed the decoded message data into the content (as claimed in claim 7 of the '426 Patent).

41.     The '426 Patent is directed to patent eligible subject matter under 35 U.S.C. § 101 and is entitled to a presumption of validity.

42.     The '530 Patent, titled "Computer Configured to Display Multimedia Content," issued on November 14, 2023, and names inventors Timothy Williams and Timothy Meier. The '530 Patent issued from U.S. Patent Application Serial No. 17/661,214 filed on April 18, 2022. A true and accurate copy of the '530 Patent is attached hereto as Exhibit 10.

43.     Honeywell International is the owner and assignee of the entire right, title, and interest in and to the '530 Patent and holds the right to sue and recover damages for infringement thereof.

44.     The '530 Patent relates to producing multimedia content viewable on a display in response to decoding a barcode. In the prior art, certain meaningful information was not displayed to a user decoding decodable indicia.

45.     The '530 Patent describes and claims novel and unconventional methods to address the problems in the prior art. The '530 Patent describes and claims technical improvements to barcode readers.

46.     For example, before the '530 Patent, it was not well-understood or conventional for a computer to identify a barcode from a stream of content, generate a flag indicating the status of decoding a barcode, and generate and display content based on that flag, which may include data

derived from the barcode overlaid on the barcode image on the visual display (as claimed in claim 16 of the '530 Patent).

47.    The '530 Patent is directed to patent eligible subject matter under 35 U.S.C. § 101 and is entitled to a presumption of validity.

48.    The '551 Patent, titled "Computer Configured to Display Multimedia Content," issued on March 12, 2024, and names inventors Timothy Williams and Timothy Meier. The '551 Patent issued from U.S. Patent Application Serial No. 18/475,816 filed on September 27, 2023. A true and accurate copy of the '551 Patent is attached hereto as Exhibit 11.

49.    Honeywell International is the owner and assignee of the entire right, title, and interest in and to the '551 Patent and holds the right to sue and recover damages for infringement thereof.

50.    The '551 Patent relates to producing multimedia content viewable on a display in response to decoding a barcode. In the prior art, certain meaningful information was not displayed to a user decoding decodable indicia.

51.    The '551 Patent describes and claims novel and unconventional methods to address the problems in the prior art. The '551 Patent describes and claims technical improvements to barcode readers.

52.    For example, before the '551 Patent, it was not well-understood or conventional for a computer to decode multiple barcodes and generate and display unique flags for each barcode embedded in the content stream, overlaid proximately on each barcode respectively (as claimed in claim 19 of the '551 Patent).

53.    The '551 Patent is directed to patent eligible subject matter under 35 U.S.C. § 101 and is entitled to a presumption of validity.

## COUNT I – INFRINGEMENT OF THE '376 PATENT

54.     Honeywell incorporates by reference the allegations contained in all preceding paragraphs.

55.     The '376 Patent is valid and enforceable.

56.     Hand Held owns the entire right, title, and interest to the '376 Patent.

57.     Scandit has directly infringed at least claim 1 of the '376 Patent—both literally and under the doctrine of equivalents—by making, using, selling, and/or offering for sale products that embody the inventions disclosed in the '376 Patent, including the Scandit Case.

58.     On information and belief, Scandit has directly infringed claim 1 of the '376 Patent by developing, testing, and using the Scandit Case in the United States

59.     A non-limiting chart evidencing Scandit's infringement of claim 1 of the '376 Patent is attached hereto as Exhibit 12.

60.     Scandit also indirectly infringed at least claim 1 of the '376 Patent with knowledge of or being willfully blind that its actions constitute infringement, since at least May 16, 2019.

61.     End users of the Scandit Case directly infringe at least claim 1 of the '376 Patent by using the Scandit Case in the United States.

62.     Scandit had induced infringement of the '376 Patent by providing information and instruction on using the Scandit Case in an infringing manner evidenced at least by: (1) marketing and sales materials provided to its customers and potential customers through its website and its other marketing activities; (2) the instructions and information contained in Scandit's instructional materials; and (3) instructional videos. For example, Scandit provided information on its website showing induced infringement of the '376 Patent. *See, e.g.*, Ex. 5. Scandit knew its activities were inducing infringement at least through copying Honeywell's patented technology.

63.     Scandit contributed to infringement of the '376 Patent by others by marketing and selling the Scandit Case, which are especially made for infringing use, with the knowledge that such use is infringing, and with the knowledge that these products are part to such infringing uses.

64.     Despite its knowledge of the '376 Patent, Scandit infringed the patent. Accordingly, Scandit's infringement was willful.

65.     As a result of Scandit's infringement of the '376 Patent, Honeywell has suffered irreparable harm for which it has no adequate remedy at law. Unless enjoined by this Court, Scandit's infringement will continue, resulting in further irreparable harm to Honeywell.

66.     Honeywell has complied with 35 U.S.C. § 287 with respect to the '376 Patent as reflected by its virtual marking practice. *See*

https://sps.honeywell.com/us/en/support/productivity/patents.

67.     Honeywell is entitled to recover damages from Scandit not less than a reasonable royalty adequate to compensate for the infringement.

68.     Scandit's unlawful actions have caused, and will continue to cause, Honeywell irreparable harm to its business and reputation unless enjoined.

## COUNT II – INFRINGEMENT OF THE '856 PATENT

69.     Honeywell incorporates by reference the allegations contained in all preceding paragraphs.

70.     The '856 Patent is valid and enforceable.

71.     Hand Held owns the entire right, title, and interest to the '856 Patent.

72.     Scandit has directly infringed and continues to directly infringe at least claim 7 of the '856 Patent—both literally and under the doctrine of equivalents—by making, using, selling,

and/or offering for sale products that embody the inventions disclosed in the '856 Patent, including the Scandit Barcode Scanner SDK.

73.    On information and belief, Scandit has directly infringed claim 7 of the '856 Patent by developing, testing, and using the Scandit Barcode Scanner SDK in the United States.

74.    A non-limiting chart evidencing Scandit's infringement of claim 7 of the '856 Patent is attached hereto as Exhibit 13.

75.    Scandit also indirectly infringed and continues to indirectly infringe at least claim 7 of the '856 Patent with knowledge of or being willfully blind that its actions constitute infringement, since at least May 16, 2019.

76.    End users of the Scandit Barcode Scanner SDK directly infringe at least claim 7 of the '856 Patent by using the Scandit Barcode Scanner SDK in the United States.

77.    Scandit had induced and continues to induce infringement of the '856 Patent by providing information and instruction on using the Scandit Barcode Scanner SDK in an infringing manner evidenced at least by: (1) marketing and sales materials provided to its customers and potential customers through its website and its other marketing activities; (2) the instructions and information contained in Scandit's instructional materials; and (3) instructional videos published by Scandit on YouTube. For example, Scandit provides instructions and documentation on its website showing induced infringement of the '856 Patent. *See, e.g.,* https://docs.scandit.com/stable/c_api/index.html (last accessed on October 25, 2024). Scandit knew its activities were inducing infringement at least through copying Honeywell's patented technology.

78.    Scandit contributes to infringement of the '856 Patent by others by marketing and selling the Scandit Barcode Scanner SDK, which are especially made for infringing use, with the

knowledge that such use is infringing, and with the knowledge that these products are part to such infringing uses.

79.    Despite its knowledge of the '856 Patent, Scandit infringed and continues to infringe the patent. Accordingly, Scandit's infringement is willful.

80.    As a result of Scandit's infringement of the '856 Patent, Honeywell has suffered and continues to suffer irreparable harm for which it has no adequate remedy at law. Unless enjoined by this Court, Scandit's infringement will continue, resulting in further irreparable harm to Honeywell.

81.    Honeywell has complied with 35 U.S.C. § 287 with respect to the '856 Patent as reflected by its virtual marking practice. *See*

https://sps.honeywell.com/us/en/support/productivity/patents.

82.    Honeywell is entitled to recover damages from Scandit not less than a reasonable royalty adequate to compensate for the infringement.

83.    Scandit's unlawful actions have caused, and will continue to cause, Honeywell irreparable harm to its business and reputation unless enjoined.

## COUNT III – INFRINGEMENT OF THE '426 PATENT

84.    Honeywell incorporates by reference the allegations contained in all preceding paragraphs.

85.    The '426 Patent is valid and enforceable.

86.    Honeywell International owns the entire right, title, and interest to the '426 Patent.

87.    Scandit has directly infringed and continues to directly infringe at least claim 7 of the '426 Patent—both literally and under the doctrine of equivalents—by making, using, selling,

and/or offering for sale products that embody the inventions disclosed in the '426 Patent, including Scandit's Barcode Scanning for Wearable Devices and the Scandit's Barcode SDK.

88.    On information and belief, Scandit has directly infringed claim 7 of the '426 Patent by developing, testing, and using its Barcode Scanning for Wearable Devices and Scandit Barcode SDK in the United States.

89.    Non-limiting charts evidencing Scandit's infringement of claim 7 of the '426 Patent is attached hereto as Exhibits 14–15.

90.    Scandit also indirectly infringed and continues to indirectly infringe at least claim 7 of the '426 Patent with knowledge of or being willfully blind that its actions constitute infringement, since at least the filing of the complaint.

91.    End users of the Barcode Scanning for Wearable Devices and Barcode SDK directly infringe at least claim 7 of the '426 Patent by using the Barcode Scanning for Wearable Devices or Barcode SDK in the United States.

92.    On information and belief, Scandit has had knowledge of or was willfully blind to the '426 Patent and that its actions constitute infringement since at least the filing of this Complaint.

93.    Scandit had induced and continues to induce infringement of the '426 Patent by providing information and instruction on using the Barcode Scanning for Wearable Devices and Barcode SDK in an infringing manner evidenced at least by: (1) marketing and sales materials provided to its customers and potential customers through its website and its other marketing activities; (2) the instructions and information contained in Scandit's instructional materials; and (3) instructional videos published by Scandit on YouTube. For example, Scandit provides numerous use cases in a video on its website showing induced infringement of the '426 Patent.

*See, e.g.*, https://www.scandit.com/resources/videos/scandit-innovation-video/ (last accessed on October 25, 2024). Scandit knew its activities were inducing infringement at least through copying Honeywell's patented technology.

94.    Scandit contributes to infringement of the '426 Patent by others by marketing and selling the Barcode Scanning for Wearable Devices and Barcode SDK, which are especially made for infringing use, with the knowledge that such use is infringing, and with the knowledge that these products are part to such infringing uses.

95.    Despite its knowledge of the '426 Patent, Scandit infringed and continues to infringe the patent. Accordingly, Scandit's infringement is willful.

96.    As a result of Scandit's infringement of the '426 Patent, Honeywell has suffered and continues to suffer irreparable harm for which it has no adequate remedy at law. Unless enjoined by this Court, Scandit's infringement will continue, resulting in further irreparable harm to Honeywell.

97.    Honeywell has complied with 35 U.S.C. § 287 with respect to the '426 Patent as reflected by its virtual marking practice. *See*

https://sps.honeywell.com/us/en/support/productivity/patents.

98.    Honeywell is entitled to recover damages from Scandit not less than a reasonable royalty adequate to compensate for the infringement.

99.    Scandit's unlawful actions have caused, and will continue to cause, Honeywell irreparable harm to its business and reputation unless enjoined.

## COUNT IV – INFRINGEMENT OF THE '530 PATENT

100.    Honeywell incorporates by reference the allegations contained in all preceding paragraphs.

101.    The '530 Patent is valid and enforceable.

102.    Honeywell International owns the entire right, title, and interest to the '530 Patent.

103.    Scandit has directly infringed and continues to directly infringe at least claim 16 of the '530 Patent—both literally and under the doctrine of equivalents—by making, using, selling, and/or offering for sale products that embody the inventions disclosed in the '530 Patent, including Scandit's Shelfview, Barcode Scanning for Wearable Devices, and Barcode SDK.

104.    On information and belief, Scandit has directly infringed claim 16 of the '530 Patent by developing, testing, and using its Shelfview, Barcode Scanning for Wearable Devices, and Barcode SDK in the United States.

105.    Non-limiting charts evidencing Scandit's infringement of claim 16 of the '530 Patent are attached hereto as Exhibits 16–18.

106.    Scandit also indirectly infringed and continues to indirectly infringe at least claim 16 of the '530 Patent with knowledge of or being willfully blind that its actions constitute infringement, at least as of the filing of this Complaint.

107.    End users of the Shelfview, Barcode Scanning for Wearable Devices, and Barcode SDK directly infringe at least claim 16 of the '530 Patent by using the Shelfview and Barcode Scanning for Wearable Devices in the United States.

108.    On information and belief, Scandit has had knowledge of or was willfully blind to the '530 Patent and that its actions constitute infringement since at least the filing of this Complaint.

109.    Scandit had induced and continues to induce infringement of the '530 Patent by providing information and instruction on using the Shelfview, Barcode Scanning for Wearable Devices, and Barcode SDK in an infringing manner evidenced at least by: (1) marketing and sales

materials provided to its customers and potential customers through its website and its other marketing activities; (2) the instructions and information contained in Scandit's instructional materials; and (3) instructional videos published by Scandit on YouTube. For example, Scandit provides numerous use cases in a video on its website showing induced infringement of the '530 Patent. *See,* *e.g.,* https://web.archive.org/web/20240423074321/https://www.scandit.com/products/wearable-devices/ (last accessed on October 25, 2024). Scandit knew its activities were inducing infringement at least through copying Honeywell's patented technology.

110.    Scandit contributes to infringement of the '530 Patent by others by marketing and selling the Shelfview, Barcode Scanning for Wearable Devices, and Barcode SDK, which are especially made for infringing use, with the knowledge that such use is infringing, and with the knowledge that these products are part to such infringing uses.

111.    Despite its knowledge of the '530 Patent, Scandit infringed and continues to infringe the patent. Accordingly, Scandit's infringement is willful.

112.    As a result of Scandit's infringement of the '530 Patent, Honeywell has suffered and continues to suffer irreparable harm for which it has no adequate remedy at law. Unless enjoined by this Court, Scandit's infringement will continue, resulting in further irreparable harm to Honeywell.

113.    Honeywell has complied with 35 U.S.C. § 287 with respect to the '530 Patent as reflected by its virtual marking practice. *See* https://sps.honeywell.com/us/en/support/productivity/patents.

114.    Honeywell is entitled to recover damages from Scandit not less than a reasonable royalty adequate to compensate for the infringement.

115.    Scandit's unlawful actions have caused, and will continue to cause, Honeywell irreparable harm to its business and reputation unless enjoined.

## COUNT V – INFRINGEMENT OF THE '551 PATENT

116.    Honeywell incorporates by reference the allegations contained in all preceding paragraphs.

117.    The '551 Patent is valid and enforceable.

118.    Honeywell International owns the entire right, title, and interest to the '551 Patent.

119.    Scandit has directly infringed and continues to directly infringe at least claim 19 of the '551 Patent—both literally and under the doctrine of equivalents—by making, using, selling, and/or offering for sale products that embody the inventions disclosed in the '551 Patent, including Scandit's Shelfview and Barcode SDK.

120.    On information and belief, Scandit has directly infringed claim 19 of the '551 Patent by developing, testing, and using its Shelfview and Barcode SDK in the United States.

121.    Non-limiting charts evidencing Scandit's infringement of claim 19 of the '551 Patent is attached hereto as Exhibits 19–20.

122.    Scandit also indirectly infringed and continues to indirectly infringe at least claim 19 of the '551 Patent with knowledge of or being willfully blind that its actions constitute infringement, since at least the filing of the complaint.

123.    End users of the Shelfview and Barcode SDK directly infringe at least claim 19 of the '551 Patent by using the Shelfview or Barcode SDK in the United States.

124.    On information and belief, Scandit has had knowledge of or was willfully blind to the '551 Patent and that its actions constitute infringement since at least the filing of this Complaint.

125.    Scandit had induced and continues to induce infringement of the '551 Patent by providing information and instruction on using the Shelfview and Barcode SDK in an infringing manner evidenced at least by: (1) marketing and sales materials provided to its customers and potential customers through its website and its other marketing activities; (2) the instructions and information contained in Scandit's instructional materials; and (3) instructional videos published by Scandit on YouTube. For example, Scandit provides numerous use cases in a video on its website showing induced infringement of the '551 Patent. *See, e.g.*, https://www.scandit.com/products/shelfview/ (last accessed on October 25, 2024). Scandit knew its activities were inducing infringement at least through copying Honeywell's patented technology.

126.    Scandit contributes to infringement of the '551 Patent by others by marketing and selling Shelfview and Barcode SDK, which is especially made for infringing use, with the knowledge that such use is infringing, and with the knowledge that these products are part to such infringing uses.

127.    Despite its knowledge of the '551 Patent, Scandit infringed and continues to infringe the patent. Accordingly, Scandit's infringement is willful.

128.    As a result of Scandit's infringement of the '551 Patent, Honeywell has suffered and continues to suffer irreparable harm for which it has no adequate remedy at law. Unless enjoined by this Court, Scandit's infringement will continue, resulting in further irreparable harm to Honeywell.

129.    Honeywell has complied with 35 U.S.C. § 287 with respect to the '551 Patent as reflected by its virtual marking practice. *See*

https://sps.honeywell.com/us/en/support/productivity/patents.

130.    Honeywell is entitled to recover damages from Scandit not less than a reasonable royalty adequate to compensate for the infringement.

131.    Scandit's unlawful actions have caused, and will continue to cause, Honeywell irreparable harm to its business and reputation unless enjoined.

### DAMAGES

132.    As a result of Scandit's acts of infringement, Honeywell has suffered actual and consequential damages. However, Honeywell does not yet know the full extent of the infringement, and its extent cannot be ascertained except through discovery and special accounting. To the fullest extent permitted by law, Honeywell seeks recovery of damages at least for reasonable royalties, unjust enrichment, and benefits received by Scandit as a result of using misappropriated Honeywell technology. Honeywell further seeks all other damages to which Honeywell is entitled under law or in equity, including lost profits and enhanced damages.

### DEMAND FOR JURY TRIAL

133.    Honeywell hereby respectfully requests a jury trial for all issues so triable.

### REQUEST FOR RELIEF

WHEREFORE, Honeywell respectfully requests the following relief:

A.  the entry of judgment on the Complaint, including all claims, causes of action, and requests for relief therein, in favor of Honeywell and against Defendant;

B.  the entry of judgment that Defendant infringes the Asserted Patents;

C.  the entry of judgment that Defendant's infringement of the Asserted Patents has been and continues to be willful;

D.  the entry of judgment against Defendant, awarding Honeywell actual damages in an amount sufficient to compensate Honeywell for Defendant's direct and indirect

infringement of the Asserted Patents, until such time as Defendant ceases its infringing conduct;

E.   the entry of judgment against Defendant, awarding Honeywell enhanced damages pursuant to 35 U.S.C. § 284;

F.   the entry of judgment against Defendants, awarding Honeywell pre-judgment and post-judgment interest to the full extent allowed under the law, as well as its costs;

G.   a determination that this is an exceptional case, and an award to Honeywell of its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

H.   an order for an accounting of damages for Defendant's acts of infringement;

I.   an award to Honeywell of its costs of suit;

J.   the entry of a preliminary and permanent injunction, enjoining Defendant, its officers, directors, agents, employees, parents, subsidiaries, affiliates, licensees, successors, and assigns, and those acting in concert or participation with them, from further acts of direct and/or indirect infringement of the Asserted Patents; and

K.   an award to Honeywell of such further and additional relief, whether legal or equitable, that Honeywell requests, that the Court determines Honeywell to be entitled, or that the Court deems just and proper.

Date:  October 25, 2024

*/s/*  *Michael E. Jones with permission*
*For Douglas L. Sawyer*
Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
POTTER MINTON, P.C.
102 N. College Ave., Suite 900
Tyler, Texas 75702
Tel: (903) 597-8311
Fax: (903) 593-0846


Douglas L. Sawyer, Esq. (admitted EDTX)
dougsawyer@paulhastings.com
PAUL HASTINGS, LLP
71 South Wacker Drive, 45th Floor
Chicago, IL 60606
(312) 499-6000


Mark T. Smith, Esq. (pro hac forthcoming)
Boris Lubarsky (pro hac forthcoming)
Jack Hynes (pro hac forthcoming)
PAUL HASTINGS, LLP
71 South Wacker Drive, 45th Floor
Chicago, IL 60606
(312) 499-6000
marksmith@paulhastings.com
borislubarsky@paulhastings.com
jackhynes@paulhastings.com


*Attorneys for Plaintiffs*